UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
IMPULSE MARKETING GROUP, INC.,        :
                                      :    CASE NO. 05 CV 7776 (KMK)
              Plaintiff,              :
                                      :
         v.                           :
                                      :
NATIONAL SMALL BUSINESS               :
ALLIANCE INC. and DIRECT              :
CONTACT MEDIA, INC.,                  :
                                      :
                   Defendants,        :
and                                   :
                                      :
NATIONAL SMALL BUSINESS               :
ALLIANCE INC.,                        :
                                      :
              Counterplaintiff,       :
                                      :
         v.                           :
                                      :
IMPULSE MARKETING GROUP, INC.,        :
                                      :
              Counterdefendant.       :
-------------------------------X


**DEFENDANT DIRECT CONTACT MEDIA, INC.'s
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Dockets.Justia.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................1

STATEMENT OF FACTS..................................................................3

ARGUMENT..................................................................5

   I.     LEGAL STANDARD..................................................................5

   II.    THE CORPORATE VEIL MAY NOT BE PIERCED WITH
       RESPECT TO DCM, A CORPORATION WITH NO RELATIONSHIP
       TO PLAINTIFF..................................................................6

      A.    THE CORPORATE VEIL MAY NOT BE PIERCED UNDER NEW
           YORK LAW..................................................................7

            1.    The Corporate Veil May Not be Pierced At Bar.................7
            2.    DCM's Alleged Involvement Fails To Bind It To
                The Contract..................................................................11

      B.    THE CORPORATE VEIL MAY NOT BE PIERCED UNDER
           CALIFORNIA LAW..................................................................13

   III.   THERE IS NO PERSONAL JURISDICTION OVER DCM..............14

      A.    THERE IS NO GENERAL JURISDICTION OVER DCM...........15

      B.    THE LONG-ARM STATUTE'S REQUIREMENTS HAVE NOT
           BEEN MET..................................................................17

      C.    DUE PROCESS DOES NOT PERMIT PERSONAL
           JURISDICTION..................................................................20

   IV.   PLAINTIFF'S QUASI-CONTRACT CLAIMS MUST FAIL
        AGAINST DCM..................................................................21

CONCLUSION..................................................................22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
IMPULSE MARKETING GROUP, INC.,     :  **CASE NO. 05 CV 7776 (KMK)**
                                   :
              Plaintiff,           :
                                   :  **MEMORANDUM OF LAW IN**
       v.                          :  **SUPPORT OF DIRECT CONTACT**
                                   :  **MEDIA, INC.'S MOTION TO**
NATIONAL SMALL BUSINESS            :  **DISMISS FIRST AMENDED COMPLAINT**
ALLIANCE INC. and DIRECT           :
CONTACT MEDIA, INC.,               :
                                   :
                   Defendants,     :
and                                :
                                   :
NATIONAL SMALL BUSINESS            :
ALLIANCE INC.,                     :
                                   :
              Counterplaintiff,    :
                                   :
       v.                          :
                                   :
IMPULSE MARKETING GROUP, INC.,     :
                                   :
              Counterdefendant.    :
-------------------------------X

Direct Contact Media, Inc. ("DCM") submits this memorandum of law in support of its motion to dismiss the First Amended Complaint ("Am. Compl.") with prejudice pursuant to Fed.R.Civ.P. 12(b)(2) and (6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

### PRELIMINARY STATEMENT

Plaintiff has decorated its Amended Complaint with some new bells and whistles in the hopes of ensnaring DCM, a non-signatory to the contract at issue, into this breach-of-contract suit. However, the infirmities of the original complaint remain uncured and once again, no sustainable claim exists against DCM.

1

In fact, the Amended Complaint is nothing more than a breach-of-contract claim against the other defendant, National Small Business Alliance ("NSBA"). Unlike NSBA, **DCM indisputably never signed the contract that forms the basis of the Amended Complaint.**

Additionally, there is no legal basis to exercise personal jurisdiction over DCM. Neither DCM nor NSBA are located in New York, nor did DCM ever agree to litigate in this district. DCM, the instant movant, is based in California and lacks sufficient contacts with this jurisdiction to be haled into this Court. The plaintiff, Impulse Marketing Group, Inc. ("IMG"), is not located in New York either, rather it is located in Georgia.[1]  In fact, the only persons located in this district that bear any relation to this case whatsoever are the attorneys.

For some reason, IMG is not content to sue the party it contracted with, so it has elected to name non-signatory DCM as a defendant in this breach of contract suit, on the ostensible basis that DCM is "inexorably intertwined" or is "sufficiently close" with NSBA such that it should be responsible under a contract it indisputably never signed. *E.g.,* Am. Compl. at ¶¶ 55 and 59.

---

[1] IMG is a Nevada corporation (Am. Compl. at ¶2), NSBA a District of Columbia corporation (*Id*. at ¶3) and DCM a California corporation (*Id*. at ¶4). IMG and NSBA entered into a contract selecting New York as the venue and source of law governing any disputes arising thereunder. DCM was not a party to that contract, or any other with the plaintiff.

These over-reaching claims against DCM are doomed to fail because IMG alleges no facts (and none exist) to meet the high standard for piercing the corporate veil. Though its new pleading now comes closer to grasping the correct legal standard, IMG once again has alleged no facts demonstrating that DCM dominated NSBA or that any such domination was used to commit a fraud or wrong against IMG. Accordingly, IMG's complaint against DCM must be dismissed for failure to state a claim upon which relief may be granted, as well as lack of personal jurisdiction.

## STATEMENT OF FACTS

The facts relevant to this motion come principally from the Amended Complaint, which is annexed to the accompanying Notice of Motion. For purposes of this motion, IMG's allegations are accepted as true. The few additional facts come from the Declaration of Raymond Longino ("Longino Decl."), also submitted herewith. Longino is DCM's Chief Operating Officer.

However factually suspect IMG's claims may be against defendant NSBA, DCM must be dismissed from this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and under Rule 12(b)(2) for lack of personal jurisdiction. This suit is a diversity action with three foreign corporations as parties, based on an alleged breach of contract for IMG to provide Internet marketing

3

services to NSBA. **DCM was indisputably not party to that contract nor any other with IMG.**

DCM is a marketing agency that was retained by NSBA. It has no connection whatsoever to the contract upon which this lawsuit is based. **As with IMG and NSBA, the relationship between co-defendants NSBA and DCM is based strictly in contract.** They are not alter-egos and there is no link between the two defendants in this case capable of supporting a cause of action against DCM. There are no interlocking executives or employees. Longino Decl. at ¶13. Thus, the tenuous connection between NSBA and DCM falls far short of the high standard required under either New York or California law to pierce the corporate veil.

There are also no facts alleged capable of sustaining personal jurisdiction over DCM, a California corporation lacking the required minimum contacts to New York. Even the Complaint admits that DCM and NSBA are incorporated in different jurisdictions. Am. Compl. at ¶¶3-4. DCM has no continuous presence in the State of New York. Longino Decl. at ¶¶ 4-10. It is not "doing business" nor has it "transacted business" in New York with respect to the allegations contained in the Complaint. *Id.* at ¶4. It maintains no licenses in New York and has no employees, officers or directors in New York. *Id.* at ¶¶ 5-6. DCM maintains no office, warehouse or other physical facility in New York nor does it own, rent or lease any real

4

property here. *Id.* at ¶7. Finally, DCM has no bank account or agents in New York, it has no telephone listing in New York and it has no branches or subsidiaries in New York. *Id.* at ¶¶ 8-9. Unlike its co-defendant NSBA, DCM was not a signatory to the contract that purportedly requires it to submit to the jurisdiction of this Court. *Id.* at ¶11. Although the Amended Complaint correctly points out that DCM's passive Internet website can be viewed in New York, this falls short of the requirements to sustain personal jurisdiction here.

DCM, therefore, is entitled to dismissal pursuant to Federal Rule Of Civil Procedure 12(b)(2) because this Court may not permissibly exercise personal jurisdiction over it.

**ARGUMENT**

## I.    **LEGAL STANDARD**

On a motion to dismiss under Fed.R.Civ.P 12(b) the Court must accept the allegations in the complaint as true and draw reasonable inferences in plaintiff's favor. *E.g., Rombach v. Chang,* 355 F.3d 164, 169 (2d Cir. 2004). However, the Court need not accept IMG's conclusory statements unsupported by factual assertions nor must it accept as true IMG's legal conclusions cloaked as factual allegations. *See Spanierman Gallery, PSP v. Love,* No. 03 Civ 3188 VM, 2003 WL 22480055 at *1 (S.D.N.Y. Oct. 31, 2003) (quoting *Papasan v. Allain,* 478 U.S. 265, 268 (1986)).

The Court should dismiss a claim "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rombach, supra,* at 169 (citation omitted).  As to all claims against DCM, dismissal is warranted as a matter of law for the reasons stated below.

## II. THE CORPORATE VEIL MAY NOT BE PIERCED WITH RESPECT TO DCM, A CORPORATION WITH NO RELATIONSHIP TO PLAINTIFF

Although it has no contractual with DCM, IMG has sued DCM for breach of contract under the theory that, despite being incorporated in jurisdictions that are 3,000 miles apart and having distinct places of business and different owners, NSBA is a mere alter-ego of DCM. Under the controlling case law cited below, IMG may not "pierce the corporate veil" and its Amended Complaint falls woefully short of making the necessary allegations in order to sustain a cause of action against DCM.

The contract at issue herein (again, which DCM is not a signatory to) calls for the application of New York law. Under New York law, it is the law of the state of incorporation, here California, that governs whether a Court should disregard the corporate form.  *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir. 1995).  Although the test for piercing the corporate veil differs under New York and California law, the result is identical: IMG has not made allegations sufficient to justify piercing the corporate veil with respect to DCM. For the sake of completeness, the laws of both New York and California are

6

analyzed herein.

### A.    THE CORPORATE VEIL MAY NOT BE PIERCED UNDER NEW YORK LAW

IMG has failed to allege a competent cause of action under New York law against DCM, with whom it has no contractual relationship.

### 1.    The Corporate Veil May Not be Pierced At Bar

In order to pierce the corporate veil under New York law and thereby hold DCM responsible for a contract it was not party to, IMG must demonstrate: a) complete domination over NSBA by DCM with respect to the transaction at issue; and b) that such domination was used to commit the wrong that allegedly injured IMG. *See Thrift Drug, Inc. v. Universal Prescription Administrators,* 131 F.3d 95, 97 (2d Cir. 1997). The Second Circuit's test comports with the New York Court of Appeals' configuration of the test. *See Morris v. New York State Dep't of Taxation and Finance,* 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993).

IMG, the party seeking to pierce the corporate veil, must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice. *Id.* The Amended Complaint alleges neither the necessary domination nor an unjust act towards the plaintiff. "The alter ego test is a stringent one, requiring, *inter alia,* that the non-signatory have no real identity independent of the signatory, not simply that the entities are

7

closely related." *Atari, Inc. v. Games, Inc.,* No. 04 Civ. 3723
(JSR), 2005 WL 447503 at *3 (S.D.N.Y. Feb. 24, 2005) (Atari
Interactive not liable for breach of contract or implied
contract signed by Atari, Inc.). Here, the Amended Complaint
includes no allegations on which such a test could be met.
Accordingly, the claims must be dismissed as to DCM.

ICM's unsupported allegations that the two defendants are
"inexorably intertwined" (Am. Compl. at ¶55) or that they
"shared a close relationship" (*Id.* at ¶57) are not enough to
bind a nonsignatory to the terms of a contract. *See Thomson-
CSF, S.A. v. American Arbitration Assn.*, 64 F.3d 773, 777-78 (2d
Cir. 1995) (corporation not bound to arbitration agreement under
veil-piercing theory). The party seeking to pierce the
corporate veil must demonstrate that "the two corporations
operated as a single economic entity such that it would be
inequitable... to uphold a legal distinction between them."
*Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1458 (2d Cir.1995)
(internal quotations and citations omitted).

No matter how generously the Amended Complaint is read, IMG
has failed to make such allegations. The plaintiff admits that
the two defendants are incorporated in different states and have
different principal places of business. Am. Compl. ¶¶3-4.
Looking at the Amended Complaint most favorably to IMG, it has,
at most, alleged that DCM and NSBA have some administrative

overlap in operations. These allegations, which DCM will contest later but which are assumed true here, are plainly insufficient as a matter of law. *See Harrison v. NBD Inc.,* 990 F. Supp. 179, 184 (E.D.N.Y. 1998) (declining to pierce corporate veil even though the co-defendants shared business facilities).

Importantly, IMG does <u>not</u> allege that NSBA and DCM ignored significant corporate formalities such that their conduct "demonstrates a virtual abandonment of separateness" as required under New York law to disregard the corporate form. *See Thomson-CSF, supra,* at 777-78; *Harrison, supra* at 184.

The Second Circuit's decision in *American Fuel Corp. v. Utah Energy Development Co., Inc.,* 122 F.3d 130 (2d Cir. 1997) demonstrates just how difficult it is for IMG to pierce the corporate veil based on the instant allegations. In that case, the plaintiff tried to compel a foreign corporation (UEDC) to arbitrate in New York when the foreign corporation was not a party to the agreement to arbitrate. *Id.* at 132. The district court ordered UEDC to arbitrate under the theory that it was the alter ego of an entity that did agree to arbitrate. The district court's order was supported by UEDC's failure to observe corporate formalities, its lack of any contracts, employees or independent office space of its own, and UEDC's listing of the same address as its alleged alter ego. *Id.* at 134-35. Despite these facts, the Second Circuit reversed, finding "the evidence

of domination is inadequate as a matter of law." *Id.* at 135. The allegations concerning NSBA and DCM come nowhere near the failed attempt to disregard corporate structure in *American Fuel.*

Judge Marrero's opinion in *Spanierman Gallery, PSP v. Love,* No. 03 Civ 3188 VM, 2003 WL 22480055 (S.D.N.Y. Oct. 31, 2003) is also extremely relevant to this motion. Defendant Richard Love actually signed the contract at issue (although not in his individual capacity); he also controlled both the signatory and non-signatory defendants and the complaint alleged the defendants were "inextricably intertwined" with each other. *Id.* at *2. Despite the foregoing, breach of contract and unjust enrichment claims were dismissed against Love and the other non-signatories because "the mere fact that Richard Love may have decision-making power with respect to both the signatory and non-signatory defendants is not enough to pierce the corporate veil without a showing of some specific wrongful conduct." *Id.* The facts of this case are even less favorable to IMG, as there is no common ownership even alleged among the defendants.

ICM's allegation that DCM is the agent of signatory NSBA (Am. Compl. at ¶10) is also not a valid basis for it to proceed against DCM because "the test for determining whether a corporation is acting as an agent for a related corporation is the same as the test imposed under the doctrine of piercing the corporate veil." *See Kashfi v. Phibro-Salomon, Inc.,* 628 F.

10

Supp. 727, 735 (S.D.N.Y. 1986) (cited approvingly in *Int'l Customs Assocs., Inc. V. Ford Motor Co.*, 893 F. Supp. 1251 (S.D.N.Y. 1995)).

### 2.    DCM's Alleged Involvement Fails To Bind It To The Contract

It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract. *Crabtree v. Tristar Automotive Group, Inc.,* 776 F. Supp. 155, 166 (S.D.N.Y. 1991) (dismissing breach of contract claims against non-signatories).  As for the second cause of action in the Amended Complaint, DCM, as a non-signatory, cannot be held liable for breach of an implied contract because there is no contract that between the two parties under which to find an implied term.  *Atari, Inc. v. Games, Inc.,* No. 04 Civ. 3723 (JSR), 2005 WL 447503 at *2 (S.D.N.Y. Feb. 24, 2005).  In *Yucyco, Ltd. v. Republic of Slovenia,* 984 F. Supp. 209 (S.D.N.Y. 1997), the plaintiff made a claim similar to one IMG advances at bar, that the Republic of Slovenia, a non-signatory, should be liable for breach of contract because it played "an integral role" in the dealings at issue therein.  *Id.* at 215-16.  The District Court dismissed the claim, holding, "This argument fails. Slovenia's involvement in the Exchange is no basis for holding it liable under the [contract] in general." *Id.* at 216.  *See also Id.* at 217 ("Although Slovenia was intimately involved in

the Exchange, that fact alone does not suggest that Slovenia 'exercise[d] general control over the day-to-day activities' of the Slovenian banks or that it engaged in conduct that would trigger alter ego liability'"). Therefore, the lengths that IMG has gone to allege DCM's activities in this dispute are not at all helpful to stating a claim against DCM.

With respect to the unsupported allegation that the defendants share a common officer, IMG's claims are still not saved. The popular rock musician John Mellencamp made a similar claim in this district yet he was not allowed to proceed with a breach-of-contract suit even though there was common ownership and an overlap of performance between signatories and non-signatories. *See Mellencamp v. Riva Music Ltd.,* 698 F. Supp. 1154, 1160 (S.D.N.Y. 1988) ("The Court is unaware of any authority, and plaintiff has not offered any, to support plaintiff's assertion that these two defendants may be liable for the breach of a contract which they are strangers to simply because they share the same director and/or owner as the other corporate defendants or because they assisted the other corporate defendants in the 'administration of the Mellencamp publishing agreements'").

Accordingly, under New York law, there is no basis to disregard the corporate structure of these separate corporations.

**B.    THE CORPORATE VEIL MAY NOT**
**BE PIERCED UNDER CALIFORNIA LAW**

California law compels the same conclusion as New York, *i.e.*, that IMG is not entitled to pierce the corporate veil and proceed against non-signatory DCM.

Under California law, "alter ego" is a limited doctrine to be invoked only where recognition of the corporate form would work an injustice to a third person. *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (internal citation omitted).

The "injustice" that must be present for the corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when the corporate separateness is illusory. *Id.* at 1149 (citation omitted). Examples of the critical facts needed to disregard corporate identities, all absent from the Amended Complaint at bar, are "inadequate capitalization, commingling of assets, [or] disregard of corporate formalities" (*Id.*), none of which are present in this case. Even common ownership and control of two corporations by one person or entity will not eviscerate the separate corporate identity that is the foundation of corporate law. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances").

13

Before the alter ego doctrine may be invoked under California law, two elements must be established: 1) such unity of interest and ownership that the separate personalities of the corporations no longer exist; and 2) that, if the acts are treated as those of one corporation alone, an inequitable result will follow. *Wady v. Provident Life and Accident Ins. Co.*, 216 F.Supp.2d 1060, 1066 (C.D.Cal. 2002). IMG's Amended Complaint fails to make allegations that there is a lack of separateness or that any inequitable result would arise if it were to proceed only against NSBA. Therefore the conclusory alter ego allegations do not pass muster.

Under both the New York and California tests for piercing the corporate veil, therefore, IMG's Amended Complaint lacks the basic required allegations, and accordingly, it should be dismissed with prejudice for failure to state a claim against DCM. Due to the indisputably separate identities of NSBA and DCM, there is no set of facts that can be alleged that NSBA is DCM's alter ego.

## III.    <u>THERE IS NO PERSONAL JURISDICTION OVER DCM</u>

In a diversity case, a district court applies the law of the forum to decide whether personal jurisdiction exists, subject to the due process requirements of the United States Constitution. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (no personal jurisdiction over corporation

under New York long arm statute).   In opposing a motion to dismiss for lack of personal juridiction, the <u>plaintiff</u> shoulders the burden of showing that jurisdiction exists over the defendant.   *In re Magnetic Audiotape Litig.,* 334 F.3d 204, 206 (2d Cir. 2003).

New York uses a two-pronged test to decide the question of personal jurisdiction: 1) whether there is jurisdiction over the defendant under the forum state's laws; and 2) whether an exercise of jurisdiction under these laws is consistent with federal due process requirements.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999). IMG meets neither prong in this case and its Amended Complaint should therefore be dismissed.

### A.    THERE IS NO GENERAL JURISDICTION OVER DCM

General jurisdiction is controlled by CPLR § 301, which "as construed by New York Courts, permits a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of presence in this jurisdiction." *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1991) (internal quotations omitted).

To fall within the purview of section 301, foreign defendants such as DCM must do more than solicit or conduct

business activities within the state occasionally or casually. *Aqua Products, Inc. v. Smartpool, Inc.,* No. 04 CV 5492 (GBD), 2005 WL 1994013 (S.D.N.Y., Aug. 18 2005). Rather they must do so with a fair measure of permanence and continuity. *Id.* The "doing business" standard is a "stringent" one requiring a showing of continuous, permanent and substantial activity in New York. *Jacobs v. Felix Bloch Erben Verlag,* 160 F.Supp.2d 722, 731 (S.D.N.Y. 2001).

Under this standard, "New York Courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Landoil, supra,* at 1043 (citing *Hoffritz For Cutlery, Inc. v. Amajac,* LO., 763 F.2d 55, 57 (2d Cir. 1985)). DCM is not domiciled here, has not consented to jurisdiction here and, as the Longino Declaration demonstrates, none of the traditional indicia are present with respect to DCM.

ICM's Amended Complaint refers to DCM's passive website as the main basis for exercising general jurisdiction over DCM. However, numerous decisions demonstrate that using a website to advertise to potential customers in New York is clearly insufficient to confer general jurisdiction. *See In re Ski Train Fir in Kaprun, Austria,* 230 F.Supp.2d 376, 383 (S.D.N.Y. 2002)

("fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction"); *Drucker Cornell v. Assicurazioni Generali S.p.A. Consolidated*, 2000 WL 284222 at *2 (S.D.N.Y. Mar. 16, 2000) (holding that a firm is not doing business here simply because New Yorkers can contact the firm via the Internet); *Hearst Corp. v. Goldberger*, 1997 WL 97097 at *8 (S.D.N.Y. Feb. 26, 1997) (holding that defendant's maintenance of a website was insufficient to support the exercise of specific jurisdiction, and therefore could not satisfy the higher standard of CPLR § 301).

Clearly, general jurisdiction over DCM does not exist in New York.

**B.    THE LONG-ARM STATUTE'S REQUIREMENTS HAVE NOT BEEN MET**

In determining if jurisdiction exists in New York, the Court must also look to the long arm statute, CPLR § 302, to determine if the exercise of in *personam* jurisdiction over the defendant is appropriate.  At bar, that would be inappropriate.

Under CPLR § 302, New York courts have personal jurisdiction over a nondomiciliary who:

> 1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or 3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of

17

conduct, or derives substantial revenue from goods
used or consumed or services rendered, in the state,
or (ii) expects or should reasonably expect the act to
have consequences in the state and derives substantial
revenue from interstate or international commerce; or
4) owns, uses or possesses any real property situated
within the state.

CPLR § 302(a).  As this is a breach of contract action, no torts
have been alleged and therefore, subparagraphs 2 and 3 clearly
cannot provide the basis for the exercise of personal
jurisdiction. Furthermore DCM is not alleged to own, use or
possess any real property situated within New York and according
to the Longino Declaration it does not in fact possess any real
property, so subparagraph 4 also does not apply.

With respect to subparagraph 1, the Amended Complaint makes
it clear that this provision cannot serve as the basis for
personal jurisdiction either. The contract at issue in the case
is between IMG, a Nevada corporation operating out of Georgia
(Am. Compl. at ¶2) and NSBA in Washington, D.C.  Services and
payments were exchanged wholly outside of New York. The only
connection to this jurisdiction is that the contract specified
New York as the venue and source of governing law. Am. Compl. at
¶23.   DCM was not party to the contract and transacted no
business in the State of New York related to this dispute. The
contacts between DCM and New York alleged throughout the
complaint, *i.e.* that New Yorkers "visited the IMG-run
website(s)" (Am. Compl. ¶37), signed up for NSBA's services (Am.

18

Compl. ¶38) or solicited business in New York (Am. Compl. ¶39)
have nothing to do with the issue of whether DCM owed or
breached a contractual obligation to IMG, and therefore they do
not establish specific jurisdiction. *See Packer v. TDI Systems,
Inc.,* 959 F. Supp. 192, 199-200 (S.D.N.Y. 1997) (granting
defendant DesOrmeaux's motion to dismiss for lack of
jurisdiction despite certain contacts with New York). The
court's reasoning is instructive to this case:

> Given the attenuated nature of the contacts alleged by
> plaintiffs, the exercise of jurisdiction is not
> justified. Plaintiffs' allegations against DesOrmeaux
> do not relate to the documents signed in New York, or
> to the financing arrangements allegedly negotiated in
> New York, in any direct manner. Moreover, DesOrmeaux
> was not bound by any of the documents signed in New
> York, except an ownership agreement [...] which did
> not in any way give rise to the instant action. In
> light of the overall circumstances, the nature and
> quality of DesOrmeaux's contacts are not sufficient to
> support long-arm jurisdiction under the "transaction
> [of business]" provision of the New York statute.

*Id.* at 200.

In *Evolution Online Systems, Inc. v. Koninklijke PTT
Nederland N.V.,* 145 F.2d 505 (2d Cir. 1998), the parties
disputed as to whether a contract existed between them.  The
alleged contract contained a forum selection clause. The Second
Circuit instructed the district court to conduct a proper
analysis to determine whether the two parties entered into a
contract, and if so, whether that contract contained a forum-
selection agreement.  *Id.* at 509. Under the instant allegations,

it is clear that any analysis must conclude that there is no contract that can require DCM to come litigate here in New York.

In short, DCM has not purposefully availed itself of the privilege of conducting business within New York, nor has it invoked the benefits and protections of its laws, nor has it agreed to be sued here, and therefore it cannot be hailed into, what is from DCM's perspective, this distant forum.

### C.    DUE PROCESS DOES NOT PERMIT PERSONAL JURISDICTION

Even if the requirements of the long-arm statute were met, it would still be impermissible to exercise personal jurisdiction over DCM because to do so would violate principles of due process, which require "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). No such act by DCM exists in this case. Furthermore, the cause of action must stem from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985). Clearly, the claim that DCM has done business with Chase Manhattan or the Democratic or Republican parties (Am. Compl., ¶¶ 32-33) do not satisfy this requirement.

In sum, DCM is an entity that has no continuous presence here, transacted no relevant business here and never signed the

only document that ties any of the parties to this district. It also never purposely availed itself of the laws of this forum. Exercise of personal jurisdiction over DCM would therefore offend "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310 (1945).

## IV.   PLAINTIFF'S QUASI-CONTRACT CLAIMS MUST FAIL AGAINST DCM

With respect to the plaintiffs' fourth, fifth and sixth claims for estoppel, quantum meruit and unjust enrichment, respectively, the law is clear beyond cavil that where there is a valid and enforceable contract, a plaintiff cannot prevail on a quasi-contractual theory of recovery. *See, e.g. Stissi v. Interstate & Ocean Transp. Co.,* 814 F.2d 848, 851 (2d Cir. 1987) ("It is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside that contract will not lie"); *Weinreich v. Sandhaus,* 850 F. Supp. 1169, 1182 (S.D.N.Y. 1994) ("It is well settled that recovery in quantum meruit is unavailable where an express contract covers the subject matter") *Clark-Fitzpatrick, Inc. v. Long Island R.R.,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987) (no action in quasi-contract ordinarily lies if there is a valid and enforceable contract); *Foss v. American Tel. & Tel. Co.,* 199 A.D.2d 668, 669, 605 N.Y.S.2d 143, 144 (3d Dep't 1993)

(no cause of action for quasi-contract or quantum meruit where there was an express contract).

## CONCLUSION

For all the reasons contained herein, the Amended Complaint in this action should be dismissed with prejudice pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure with respect to defendant Direct Contact Media, Inc. Moreover, Direct Contact Media, Inc. respectfully requests that this Court award it any further relief that it deems appropriate, including costs and reasonable attorney's fees.

Dated: New York, New York
       December 28, 2005

By: _Scott Shaffer_____
The Lustigman Firm, P.C.
Andrew B. Lustigman (AL-8209)
Scott Shaffer (SS-6560)
149 Madison Avenue, Suite 805
New York, New York 10016
Telephone: (212) 683-9180
Facsimile: (212) 683-9181

Attorneys For Defendant
Direct Contact Media, Inc.

## CERTIFICATE OF SERVICE

I, Scott Shaffer, an associate of The Lustigman Firm, P.C., counsel for the defendants in the within action, do hereby certify that true and correct copies of each the following documents:

NOTICE OF MOTION;

DEFENDANT DIRECT CONTACT MEDIA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; and

DECLARATION OF RAYMOND LONGINO

were served by hand delivery on the 29th day of December 2005 upon counsel for plaintiff in the within action by depositing same in a sealed envelope and causing a courier service to hand deliver it to the following person and address:

Sean A. Moynihan, Esq.
Klein, Zelman, Rothermel & Dichter
485 Madison Avenue
New York, NY 10022

counsel for the plaintiff in this matter.

SCOTT SHAFFER

Dated: December 29, 2005