```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
IMPULSE MARKETING GROUP, INC.,     : CASE NO. 05 CV 7776 (KMK)
                                   :
              Plaintiff,           :
      v.                           :
                                   :
NATIONAL SMALL BUSINESS            :
ALLIANCE INC. and DIRECT           :
CONTACT MEDIA, INC.,               :
                                   :
              Defendants,          :
and                                :
                                   :
NATIONAL SMALL BUSINESS            :
ALLIANCE INC.,                     :
                                   :
              Counterplaintiff,    :
                                   :
      v.                           :
                                   :
IMPULSE MARKETING GROUP, INC.,     :
                                   :
              Counterdefendant.    :
----------------------------------X
```

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT DIRECT CONTACT MEDIA, INC.'S
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................1

I.   PERSONAL JURISDICTION OVER DCM DOES NOT EXIST
     AT BAR..........................................................................................................2

     1.   There is No General Jurisdiction.............................................2

     2.   There is No Specific Jurisdiction.............................................3

     3.   Estoppel Does Not Apply To DCM................................................4

     4.   There Is No Basis To Enforce The Forum
          Selection Clause Against DCM, A Non-Signatory.........5

     5.   Asserting Jurisdiction Over DCM Violates Due
          Process..................................................................................................6

II.  IMG HAS NOT STATED A CLAIM AGAINST DCM..........................................7

CONCLUSION......................................................................................................10

Direct Contact Media, Inc. ("DCM") submits this memorandum of law in further support of its motion to dismiss the First Amended Complaint ("Am. Compl.") with prejudice pursuant to Fed.R.Civ.P. 12(b)(2) and (6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

## INTRODUCTION

In both its First Amended Complaint and its Memorandum Of Law In Opposition To DCM's Motion To Dismiss ("IMG Mem."), plaintiff Impulse Marketing Group, Inc. ("IMG") persists in its refusal to accept that the law does not permit it to assert any of its claims in New York against DCM, a party with whom it has no contract and no basis to sue in this district. Incredibly, IMG continues to claim, beyond all reason, that DCM, a California corporation, is subject to general jurisdiction here despite the uncontested facts that it has no facilities, property or personnel in New York. IMG also reiterates its untenable claim that DCM and co-defendant National Small Business Alliance, Inc. ("NSBA") are either 1) alter egos of each other, even though they are incorporated in separate states and have no overlapping management or ownership; or 2) that through a casual remark made in an e-mail, that IMG adopted NSBA's contract and therefore is obligated to pay hundreds of

thousands of dollars on behalf of NSBA. As discussed below, IMG is wrong on all counts[1] and none of its arguments have any merit.

## I.   PERSONAL JURISDICTION OVER DCM DOES NOT EXIST AT BAR

### 1.   There Is No General Jurisdiction

With respect to IMG's contention that California-based DCM is subject to general jurisdiction in New York, IMG chose not to contest DCM's assertion that the indicia of general jurisdiction used in Second Circuit decisions are absent here (*see* Declaration of Raymond Longino, submitted with opening brief): DCM lacks any office or physical presence in New York; DCM has no bank accounts or other property in New York; DCM has no employees or agents in New York; and DCM does not actively solicit business in New York. *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1991). At most, IMG's claims show DCM maintains a passive website viewable in New York, and it had perhaps two or three past clients here. Instead of addressing the usual criteria (which are absent), IMG lamely seeks to create a new standard for general jurisdiction by arguing that DCM is continuously

---

[1] IMG now tries to lay the groundwork for a third chance to state a claim against DCM by asking for leave to amend its complaint yet again (IMG Mem. at n.1). It threatens to assert tort claims against DCM but doesn't specify how a Georgia corporation can sue a California corporation in New York when none of the allegedly tortious conduct or injury occurred here. IMG has already had two bites at the apple; it should not get a third. It also seeks to delay the inevitable by asking to conduct discovery against DCM prior to dismissal.

present in New York because it completed a form agreement when registering an Internet domain name and may have a tenuous relationship with two or three New York-based entities. *See* IMG Mem. at 17-18. This is not the standard considered under Second Circuit law.

2.   **There Is No Specific Jurisdiction**

IMG's argument that specific jurisdiction exists is even weaker than the one it presses for general jurisdiction. IMG admits that in order to establish specific jurisdiction, it must show that DCM transacted business within the state <u>and</u> that the cause of action arose from that transaction (IMG Mem. at 18). **Under the facts of this case, such a showing is impossible.** The contract at issue is between two out-of-state corporations, (IMG and NSBA), a claim is asserted against a third foreign corporation (DCM), and the performance and payments at issue were all exchanged wholly outside of New York. The only connection to this jurisdiction is that the contract between IMG and NSBA specified New York as the venue and source of governing law. The issues raised by IMG on page 19, that some of the leads procured by IMG were inevitably based in New York, have nothing to do with the facts underlying this action, and are nothing more than a misguided attempt to bootstrap DCM into jurisdiction based on leads provided to DCM <u>by IMG for NSBA's benefit</u>. IMG Mem. at 7.

3

IMG's allegations concern the alleged breach of a contract between IMG and NSBA through NSBA's alleged non-payment. IMG provides no legal authority that would permit the Court to impose the IMG-NSBA contract upon DCM. For example, IMG cites irrelevant case law (IMG Mem. at 9) discussing whether an unsigned contract may be enforced against a party whose signature the document was intended for, but who neglected to formally execute the contract. This case is totally different, as there was never any intent on anyone's part that DCM would sign the contract. IMG and NSBA intended to enter into a two-party contract and did exactly that, so the cited cases are irrelevant. Next, IMG cites *Filanto S.p.A. v. Chilewich Intern. Corp.*, 789 F. Supp. 1229 (S.D.N.Y. 1991), which is similarly inapposite. The *Filanto* decision, like IMG's other citations, held that a contract was formed between two parties despite the lack of an iron-clad document:

> Filanto finds itself in an awkward position: it has sued on a contract whose terms it must now question in light of the defendants' assertion that the contract contains an arbitration provision.

*Id.* at 1240. The holding of *Filanto* is irrelevant to the situation at bar where IMG is attempting to hold DCM responsible under a contract it was never intended to be party to.

### 3. Estoppel Does Not Apply To DCM

IMG claims estoppel prevents DCM from "repudiating the forum selection clause." The two cases cited for the proposition

4

that estoppel should apply both contain an element not present at bar, *i.e.*, the contract containing the forum selection clause specifically contemplated the estopped parties would be bound to the agreement at issue. In *HD Brous & Co., Inc., v. Mrzyglocki*, No. 03 Civ. 8385, 2004 WL 376555 (S.D.N.Y. Feb. 26, 2004), the estopped party, HD Brous was "a named beneficiary of the Agreement" that contained the forum selection clause. *Id.* at *6. In *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060 (2d Cir. 1993), the estopped party, Noraudit, was given the rights to use the name "Deloitte" by an agreement that conditioned such right on Noraudit's adoption of the entire agreement. Noraudit received a copy of the agreement, didn't object and actively used the name "Deloitte." *Id.* at 1064. This element is entirely missing at bar, as the contract between IMG and NSBA does not reference DCM in any way, and thus, it would be inequitable to estop DCM when it has never accepted the forum selection clause in the first place.

### 4. There Is No Basis To Enforce The Forum Selection Clause Against DCM, A Non-Signatory

IMG makes no attempt to show that DCM was a third-party beneficiary under the contract, because it cannot satisfy the requirements to do so. Instead, IMG tries to enter through the back door, claiming the parties are "closely related." However, its reliance on *Weingrad v. Telepathy, Inc.*, No. 05 Civ. 2024, 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) is misplaced because a

5

key fact is different. In *Weingrad,* the plaintiff signed a contract containing a Virginia forum selection clause but disregarded it by suing several parties in this district, including non-signatories to the contract. Judge Mukasey dismissed the complaint because the plaintiff contractually agreed that all litigation under the contract would be in Virginia, so the plaintiff was bound by its own choice of forum, even as to closely related non-signatories. *See Id.* at *4 ("Weingrad... agreed to the Service Agreement in 2003. He is bound by the terms of the forum selection clause even if he did not take the time to read it[.]")  At bar, IMG asks for something very different than the situation before Judge Mukasey: IMG wants to bind DCM to a forum selection clause it neither signed nor saw. *Weingrad* deals with enforcing a clause against one who agreed to it, albeit with slightly different parties and provides no authority to force DCM to litigate here.

5. **Asserting Jurisdiction Over DCM Violates Due Process**

Despite IMG's claim that jurisdiction in New York was foreseeable, it would violate due process to subject California-based DCM to jurisdiction in New York. Although some of the leads provided to DCM by IMG may have been New York addresses, due process is not satisfied because the contacts with the jurisdiction must be related to the cause of action, here breach of contract. *See Siegel v. Holson Co.*, 768 F.Supp. 444, 446

6

(S.D.N.Y.1991)(dismissing defendant from case due to lack of personal jurisdiction). IMG should not be allowed to bootstrap itself into jurisdiction because of leads it provided.

Finally, as there is no personal jurisdiction over DCM, the non-contractual claims against it should also be dismissed.

## II. IMG HAS NOT STATED A CLAIM AGAINST DCM

DCM most certainly did not "adopt and/or assume" the NSBA contract as IMG claims. The cases cited by IMG in support of this proposition are so plainly distinguishable from the instant facts as to make IMG's entire argument misleading. DCM invokes a line of cases where a party did not execute a contract but its subsequent conduct evidenced assent to the terms of the unsigned contract[2]. These cases are very different, to the point of being irrelevant to IMG's attempt to hold a third party responsible for a fully executed contract between two different entities. IMG relies on *Harris Corp. v. McBride and Associates, Inc.*, No. 01-CV-0106E(F), 2002 WL 1677695 (W.D.N.Y. July 19, 2002), writing that defendant McBride "admitted to the existence of the contract" (IMG Mem. at p. 21). This misrepresents the text of the decision, which in fact reads that "McBride has *admitted* a breach of contract and the amount due thereunder." *Id.* at *4 (emphasis in original). Contrary to the impression IMG tries to

---

[2] For example, in, *Rosenbloom v. Adams, Scott & Conway, Inc.*, 521 F. Supp. 372, 382, *aff'd*, 688 F.2d 816 (2d Cir. 1981), which was cited by IMG, the parties "did not intend to be bound by the terms of the letter of intent."

make with this Court, McBride did not accept responsibility for another party's contract, only its own, so the language quoted by IMG is meaningless to this dispute. Furthermore, DCM is not a party to the contract at issue and therefore admits to no breach.

In another case relied on by IMG, *ESI, Inc. v. Coastal Corp.*, 61 F. Supp.2d 35 (S.D.N.Y. 1999), IMG neglects to mention that the contract at issue was actually assigned to Tenneco, the party held to have assumed the contract. *Id.* at 74 ("upon such assignment, [Tenneco] agrees to be responsible for Trigen's obligations under the PPA") (bracketed language in original). Indisputably, there was no assignment from NSBA to DCM at bar and, in any event, one or two out-of-context quotes from informal e-mails hardly rise to the level of involvement necessary to find an assumption of the contract. To the extent IMG claims the contract was adopted orally (IMG Mem. at p.2), the Statute of Frauds acts as a bar to this unsubstantiated, barebones allegation. An accurate discussion of the law illuminates that IMG, although it alleges some acts performed by DCM, falls far short of the standard for showing that DCM assumed NSBA's contractual obligations. For example, in *Thomson-CSF, S.A. v. American Arbitration Assn.*, 64 F.3d 773 (2d Cir. 1995), the Second Circuit reversed a district court ruling and held that a <u>corporate parent</u> that recently purchased the

subsidiary did not assume the obligations of an agreement between the subsidiary and the plaintiff, <u>even though the parent was aware that agreement purported to bind the parent</u>. The district court <u>was reversed on appeal</u>. The district court held that, "the Court may bind Thomson [the parent] based on its conduct in voluntarily becoming ··· an affiliate, on the degree of control Thomson exercises over [Rediffusion], and on the interrelatedness of the issues," (*Id.* at 776) <u>but it was reversed on appeal</u>. In other words, despite a parent-subsidiary relationship and claims of interrelatedness, the parent was not bound by a contract signed by its subsidiary. The Second Circuit reached its conclusion despite allegations that the parent accepted benefits from the agreement, just as IMG now claims DCM did.

As for the alter ego theory, plaintiff's argument is so brief as to amount to a tacit abandonment of its attempt to pierce the corporate veil: no facts are alleged and no cases cited tending to show that these two distinct entities (DCM and NSBA) should be treated as one entity despite their completely separate charters, management, ownership and places of business.[3]

---

[3] In its Amended Complaint at ¶63, IMG alleges DCM and NSBA share common executives, officers and ownership but NSBA executive Dennis Mario is the only person alleged to overlap. DCM's CEO, Raymond Longino already submitted a sworn declaration denying any overlap between DCM and NSBA. Mario has completed a declaration, submitted herewith, stating he is <u>not</u> an executive, officer or owner of DCM in any way, shape or form. Other than an

9

## CONCLUSION

For all the reasons contained herein as well as in the moving papers, the Amended Complaint in this action should be dismissed with prejudice pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure with respect to defendant Direct Contact Media, Inc. Moreover, Direct Contact Media, Inc. respectfully requests that this Court award it any further relief that it deems appropriate, including costs and reasonable attorney's fees.

Dated: New York, New York
       January 31, 2006

By: /s/ Scott Shaffer
The Lustigman Firm, P.C.
Andrew B. Lustigman (AL-8209)
Scott Shaffer (SS-6560)
149 Madison Avenue, Suite 805
New York, New York 10016
Telephone: (212) 683-9180
Facsimile: (212) 683-9181

Attorneys For Defendant
Direct Contact Media, Inc.

---

unsupported allegation, there is nothing in the Amended Complaint, nor any basis in fact, demonstrating any overlap. IMG's president, Jeffrey Goldstein, submits a seven-page declaration that fails to identify any person in common. Thus, there is no evidence or even issue of fact created with respect to whether the companies are alter egos.

**CERTIFICATE OF SERVICE**

    I, Scott Shaffer, an associate of The Lustigman Firm, P.C., counsel for the defendants in the within action, do hereby certify that true and correct copies of each the following documents:

DEFENDANT DIRECT CONTACT MEDIA, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; and

DECLARATION OF DENNIS MARIO

were served by hand delivery on the 31st day of January 2006 upon counsel for plaintiff in the within action by depositing same in a sealed envelope and causing a courier service to hand deliver it to the following person and address:

Sean A. Moynihan, Esq.
Klein, Zelman, Rothermel & Dichter
485 Madison Avenue
New York, NY 10022

counsel for the plaintiff in this matter.

                                            _____
                                            SCOTT SHAFFER

                                            Dated: Janaury 31, 2006