UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IMPULSE MARKETING GROUP, INC.,

                              Plaintiff,

        -v-                                        Case No. 05-CV-7776 (KMK)

NATIONAL SMALL BUSINESS ALLIANCE, INC.              <u>OPINION & ORDER</u>
and DIRECT CONTACT MEDIA, INC.,

                              Defendants.

---

<u>Appearances</u>:

Sean A. Moynihan, Esq.
Peter J. Glantz, Esq.
Klein, Zelman, Rothermel & Dichter, L.L.P.
New York, New York
*Counsel for Plaintiff Impulse Marketing Group, Inc.*

Andrew B. Lustigman, Esq.
Scott Shaffer, Esq.
The Lustigman Firm, P.C.
New York, New York
*Counsel for Defendant Direct Contact Media, Inc.*

KENNETH M. KARAS, District Judge:

    Plaintiff Impulse Marketing Group, Inc. ("IMG") filed this lawsuit against the National

Small Business Alliance, Inc. ("NSBA") and Direct Contact Media, Inc. ("DCM") for breach of

contract and various contract-related claims.  DCM moves to dismiss this action as to DCM for

lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim

upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth

below, the Court denies both of DCM's Motions to Dismiss.  The Motion to Dismiss for lack of

personal jurisdiction is denied without prejudice to renew after jurisdictional discovery.

Dockets.Justia.com

## I.  Background

The following facts are either undisputed or are assumed to be true as alleged by Plaintiff only for purposes of this Motion.

### A.  Factual Background

#### 1.  The Parties

IMG is a corporation organized under the laws of the State of Nevada, and its principal place of business is in Atlanta, Georgia.  (First Am. Compl. ¶ 2.)  IMG is an online marketing company that promotes, markets, and sells various products and services on behalf of third-party advertisers.  (*Id.* ¶ 5.)  NSBA is a District of Columbia corporation with its principal place of business in Washington, D.C.  (*Id.* ¶ 3.)  NSBA is a membership-based association of small businesses and individuals that offers discounts and services to its members.  (*Id.* ¶ 6.)  DCM is a California corporation with its principal place of business in San Diego, California.  (*Id.* ¶ 4.)  DCM delivers marketing campaigns for its clients via call centers, broadcast and print media, and direct mail.  (*Id.* ¶ 24.)

#### 2.  Agreements Entered Into by the Parties

On April 26, 2005, IMG and NSBA entered into a written Advertiser Insertion Order and Advertiser Master Terms and Conditions Agreement ("Agreement"), whereby IMG would provide certain online marketing services to NSBA for a fee.  (*Id.* ¶ 7.)  Under the Agreement, IMG retained the right to hold NSBA's agents jointly and severally liable for all amounts due under the Agreement.  (*Id.* ¶ 10.)  In addition, the Agreement contains a choice of law and venue provision, which states:

Governing Law.  This Agreement shall be governed by, construed

> and interpreted according to the laws of the State of New York.
> The parties agree that the appropriate, convenient and exclusive
> venue for any action arising out of this Agreement shall be the
> court of appropriate jurisdiction in New York, New York. The
> parties hereby waive any right to a jury trial in such action.[1]

(Decl. of Jeffrey Goldstein in Opp'n to Def. Direct Contact Media Inc.'s Mot. to Dismiss

Impulse Marketing Group, Inc.'s Am. Compl. as Against DCM ("Goldstein Decl.") Ex. A3.) On

July 18, 2005, IMG and NSBA entered into an Addendum to the Agreement ("Addendum").

(First Am. Compl. ¶ 8; *see also* Goldstein Decl. Ex. A5.) Although DCM was not a party to the

Agreement or Addendum[2] (Decl. of Direct Contact Media, Inc. In Supp. of Its Mot. to Dismiss

the Compl. ¶ 11 ("Longino Decl.")), DCM provided marketing services to NSBA (*id.* ¶ 13).

Under the Contract, IMG earned compensation each time an online user completed a

registration application – referred to as "Leads" – for a particular NSBA product and/or service

on websites designated by IMG. (First Am. Compl. ¶ 12.) At the request of NSBA and DCM,

IMG was required to identify and compile a list of all Leads and send them to NSBA and DCM.

(*Id.*) Additionally, IMG was paid a fee for the sale of products and/or services to any online

users who responded to IMG-placed advertisements but who did not fully complete the

associated registration application on the IMG-designated websites. (*Id.* ¶ 14.) A partially

completed registration application was referred to as a "Non-Complete." (*Id.*) IMG transmitted

substantially all Non-Completes relating to the Contract to DCM at DCM's explicit direction so

that DCM could solicit the Non-Complete customers directly. (*Id.* ¶ 15.) During the course of

---

[1]This paragraph from the Agreement is herein referred to as "the forum-selection clause."

[2]The Agreement and the Addendum are hereinafter collectively refered to as "the Contract."

3

performance under the Contract, IMG's main contacts were representatives of DCM, who "micro-managed each transaction" in the Contract. (*Id.* ¶¶ 42-43.) At various points during performance of the Contract, representatives from DCM informed IMG that DCM was "the real party in interest with respect to the Contract." (*Id.* ¶¶ 42-43, 79.) IMG also alleges that "DCM exercised complete domination over NSBA with respect to the transactions underlying the Contract" and that such domination was used to injure IMG. (*Id.* ¶¶ 62, 64.)

IMG submitted invoices for marketing services to NSBA and submitted substantially all of the invoices for Non-Completes, and some invoices for Leads, to DCM. (*Id.* ¶ 16.) DCM directly compensated IMG after receiving those invoices. (*Id.* ¶ 18.) As of August 15, 2005, NSBA and DCM, on behalf of NSBA, paid IMG a total of $565,930.50 for services rendered. (*Id.* ¶ 19.) Of this total, DCM paid at least $44,133 for IMG-generated Non-Completes.[3] (*Id.* ¶¶ 51-53.) Thereafter, NSBA and DCM ceased making payments on outstanding invoices from IMG. (*Id.* ¶ 19.) On August 19, 2005, NSBA provided IMG with notice that terminated the Contract, effective immediately. (*Id.* ¶ 20.)

Although DCM is not a signatory to the Contract, IMG alleges that DCM assumed the contract, *inter alia*, "by micro-managing each transaction underlying the Contract . . . [and by] explicitly admitting to the existence of a contractual relationship between IMG and DCM . . . ." (*Id.* ¶ 42.) IMG asserts that IMG's main contacts throughout performance of the Contract were two DCM principals: Raymond Longino and Michael Holleran. (*Id.* ¶¶ 42-43.) Plaintiff points

---

[3]DCM made a total of three separate payments for $21,690, $2655, and $19,788, which comes to a total of $44,133. (First Am. Compl. ¶¶ 51-53.)

to an email sent on June 3, 2005[4] to illustrate DCM's acknowledgment of a contract between DCM and IMG.  The email from Longino to IMG stated that DCM was "selling memberships in NSBA" and that IMG was "doing the job" it "contracted with DCM to do."  (*Id.* ¶¶ 44, 67.)  In another email, Longino told IMG that, "[w]e [DCM] are looking forward to a long and mutually successful partnership."  (*Id.* ¶ 48.)  In addition, IMG avers that DCM assumed obligations under the Contract by demanding that IMG generate increased traffic for products and/or services (*id.* ¶¶ 46-47), and by making payments on behalf of NSBA for services rendered under the Contract (*id.* ¶¶ 49-53).  Finally, IMG alleges that DCM is bound by the Contract because DCM is NSBA's alter ego.  (*Id.* ¶¶ 62-82.)

### 3.  DCM's Alleged Contacts with New York

DCM operates a website that is accessible to users from New York.  (*Id.* ¶¶ 27-28.) Specifically, DCM promotes marketing services to New York-based businesses (*id.* ¶ 29); accepts orders from New York-based businesses (*id.* ¶ 30); receives revenue from New York residents and consumers (*id.* ¶ 31); and delivers "business to business" and "business to consumer" marketing services for various New York-based businesses (*id.* ¶ 32).  During performance of the Contract, tens of thousands of New York-based individuals visited the IMG-run websites.  (*Id.* ¶ 37.)  Hundreds or thousands of these visits resulted in Non-Completes, and their information was delivered to DCM at its express direction.  (*Id.* ¶ 38.)  DCM also promoted and marketed services to these individuals after receiving thousands of New York-resident leads

---

[4]Plaintiff states that the First Amended Complaint mistakenly attributes August 2005 as the date when this email was sent, when it was actually sent on June 3, 2005.  (Mem. of Law in Opp'n to Def. DCM's Mot. to Dismiss IMG's Am. Compl. as Against DCM 5 n.4; Goldstein Decl. Ex. B.)

from IMG.  (*Id.* ¶¶ 39-41.)

    B.  Procedural Background

    The First Amended Complaint asserts seven causes of action, five of which name DCM.

Against DCM, Plaintiff seeks relief for claims of breach of contract, breach of implied contract,

promissory estoppel, quantum meruit, and unjust enrichment.  (*Id.* ¶¶ 90-118.)  Plaintiff claims

that DCM is amenable to suit in New York on three grounds:  first, DCM is subject to general

jurisdiction under New York law (*id.* ¶¶ 24-35); second, DCM is subject to specific personal

jurisdiction in New York (*id.* ¶¶ 36-41); and third, DCM is bound by the Contract's forum-

selection clause which specifies New York as the relevant jurisdiction (*id.* ¶¶ 42-84).  With

respect to the third claim for jurisdiction, Plaintiff argues that DCM is bound by the Contract

forum-selection clause for four reasons:  (1) express assumption of the Contract; (2) estoppel; (3)

the close relationship between NSBA and DCM; and (4) DCM is NSBA's alter ego.  (*Id.*)

    DCM has moved to dismiss this case for two reasons.  First, DCM argues that this Court

lacks personal jurisdiction over DCM, citing Fed. R. Civ. P. 12(b)(2).  Second, DCM moves to

dismiss Plaintiff's alter ego claim and quasi-contract claims for failure to state a claim upon

which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  Discussion

    A.  Standard of Review

    "The function of a motion to dismiss 'is merely to assess the legal feasibility of the

complaint . . . .'"  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774,

779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).  On a

motion to dismiss filed under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing

that the court has jurisdiction over the foreign defendant. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam). The Court will "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations" but "will not draw 'argumentative inferences' in the plaintiff's favor." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). Prior to discovery, "the plaintiff need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials to defeat the motion." *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998) (quotation marks and citations omitted). However, "[v]ague and conclusory allegations in a pleading are insufficient to establish personal jurisdiction." *In re Bayou Hedge Fund Inv. Litig.*, 472 F. Supp. 2d 534, 538 (S.D.N.Y. 2007); *see also Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (holding that "conclusory non-fact-specific jurisdictional allegations" do not make out a prima facie case for extending jurisdiction).

DCM's motion under Fed. R. Civ. P. 12(b)(6) posits that Plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle-[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted and second alteration in original). In *Bell Atlantic, id.* at 1964-69, the Supreme Court also abandoned reliance on the oft-cited line from *Conley v. Gibson* that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]"

7

355 U.S. 41, 45-46 (1957).  As the Court explained, a literal application of *Conley*'s "no set of

facts" rationale is improper because "a wholly conclusory statement of claim would survive a

motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later

establish some 'set of [undisclosed] facts' to support recovery . . . ." *Bell Atl.*, 127 S. Ct. at 1968.

Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief

above the speculative level . . . [,]" *id.* at 1965, and "once a claim has been stated adequately, it

may be supported by showing any set of facts consistent with the allegations in the complaint[,]"

*id.* at 1969.  Plaintiff must allege "enough facts to state a claim to relief that is plausible on its

face." *Id.* at 1974.  If it "ha[s] not nudged [its] claims across the line from conceivable to

plausible, [its] complaint must be dismissed." *Id.*

When considering a Rule 12(b)(6) motion, a court must limit itself to facts stated in the

complaint, documents attached to the complaint, and documents incorporated into the complaint

via reference. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir.

1996) (citation omitted).  The Court will accept as true Plaintiff's allegations, and draw all

inferences in Plaintiff's favor. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.

1993); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005).

At this stage, the Court is not concerned with weighing the evidence which would be presented at

trial. *See Chosun Int'l Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir. 2005).

### B.  Motion to Dismiss for Lack of Jurisdiction

Plaintiff advances a number of arguments to support its claim that this Court has both

general and personal jurisdiction over DCM.  Plaintiff also argues that DCM is bound by the

Contract's forum-selection clause, which specifies that venue is in New York, on a variety of

grounds, to wit:  assumption of the contract, alter ego liability, promissory estoppel, unjust enrichment, and quantum meruit.  If Plaintiff prevails on any one of the contract theories, the Court will deny DCM's jurisdictional objections.

"A district court has 'broad discretion' in deciding a motion under Rule 12(b)(2), including the discretion to conduct an evidentiary hearing if the Court believes one is warranted." *Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664, 2005 WL 612814, at *2 (S.D.N.Y. Mar. 14, 2005) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986)).  At this stage of the case, the Parties have not conducted extensive discovery and the Court has not conducted an evidentiary hearing on the jurisdictional questions presented. Without the benefit of additional discovery, in particular jurisdictional discovery, the Court cannot readily adjudicate Plaintiff's arguments for general and personal jurisdiction.  Therefore, the Court will not reach these arguments at this time.  Instead, it will consider Plaintiff's argument that DCM has assumed the Contract.  This issue is more readily decided by the Court at this time, no doubt, in part, because the facts necessary to state this claim are within Plaintiff's control.

Plaintiff argues that DCM is bound by the Contract's forum-selection clause, which Plaintiff believes gives this Court jurisdiction over DCM, because DCM has assumed the Contract.  The Parties have not, however, addressed the question of what body of substantive law should be used to decide whether DCM is bound by the Contract.  This is a diversity action, so the Court will apply New York's substantive law because New York is the forum state in which this Court sits.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Crum & Forster Specialty Co. v. Safety Fire Sprinkler Corp.*, 405 F. Supp. 2d 223, 227 (E.D.N.Y. 2005)

9

(applying New York law).

"It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Crabtree v. Tristar Auto. Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991); *see also Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.*, 549 N.Y.S.2d 57, 58 (App. Div. 1989) (holding that a non-party to a contract is not in privity with the contract's signatories). Plaintiff alleges that a number of DCM's acts and statements are sufficient to demonstrate that DCM assumed the Contract, such as: DCM's micro-management of Plaintiff's performance under the Contract; DCM's demand that Plaintiff direct Non-Completes to DCM; DCM's direct payments to Plaintiff for the Non-Completes; and a number of statements made by DCM's principals, which in Plaintiff's estimation, suggest that DCM was the actual party in interest or acknowledged that DCM had assumed obligations under the Contract or both.

Plaintiff does not claim that the Contract was assigned to DCM, so under *Crabtree*, the Court must decide whether DCM assumed the Contract. As an initial matter, the fact that DCM did not sign the Contract is not dispositive of this issue, because "[a] written contract need not be signed to be binding against a party, so long as the party indicates through performance of its terms or other unequivocal acts that it intends to adopt the contract." *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 631 (S.D.N.Y. 1985). There are few cases, however, that explain what is required for a non-signatory to a contract to "assume" a contract. In *ESI, Inc. v. Coastal Corp.*, the court explained that "a non-signatory to a contract can be named as a defendant in a breach of contract action only if the party is in privity with the plaintiff or has assumed the obligations of the contract." 61 F. Supp. 2d 35, 73 (S.D.N.Y. 1999); *see also Atari, Inc. v. Games, Inc.*, No. 04

10

Civ. 3723, 2005 WL 447503, at *3 (S.D.N.Y. Feb. 24, 2005) (applying ESI).

Privity of contract is a legal concept that has been traced to the decisions of mid-nineteenth century English courts. *See* Rizvan Khawar, Comment, *Reinsurance and Privity in the Past, Present, and Future: Privity of Contract in Reinsurance and the Contracts (Rights of Third Parties) Act 1999*, 77 Tul. L. Rev. 495, 497-98 (2002) (discussing privity's origins). Several courts, relying on Black's Law Dictionary, have defined "privity of contract" to mean "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so." Black's Law Dictionary 1237-38 (8th ed. 2004); *see also Zeno v. Ford Motor Co.*, 480 F. Supp. 2d 825, 841 (W.D. Pa. 2007) (relying on Black's Law Dictionary); *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950, 2005 WL 2148925, at *10 (S.D.N.Y. Sept. 6, 2005) (same); *Piper Acceptance Corp. v. Barton*, No. 83 Civ. 4998, 1987 WL 5801, at *2 (S.D.N.Y. Jan. 14, 1987) (same). Privity of contract has long been held as a requirement for a breach of contract action. *See Perma Pave*, 549 N.Y.S.2d at 58 (holding that a plaintiff may not assert a claim "to recover damages for breach of contract against a party with whom it is not in privity"); *accord Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997) (same).

The question here is whether there is privity of contract between Plaintiff and DCM. Drawing all inferences in Plaintiff's favor, DCM's actions and words suggest that there is. Plaintiff has alleged that DCM played a considerable role in the management and performance of the Contract, because DCM's interests were aligned with Plaintiff's successful management of Leads and Non-Completes. DCM's statements to Plaintiff that DCM was "the real party in interest[,]" coupled with DCM's three payments to Plaintiff points strongly to the fact that DCM

and Plaintiff shared similar interests, which suggests that the Parties were in privity.

In sum, Plaintiff has alleged that DCM "micro-managed" performance under the Contract, acknowledged that it was the actual party in interest, and paid for Plaintiff's services. The Second Circuit has held that "the existence of a contract may be established through conduct of the parties recognizing the contract." *Apex Oil Co. v. Vanguard Oil & Serv. Co.*, 760 F.2d 417, 422 (2d Cir. 1985). Plaintiff's allegations are not merely that DCM assisted in the administration of the Contract, *see Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1160 (S.D.N.Y. 1988) (holding that assistance in the administration of contract does not bind non-party to contract), but that it assumed the role of a party to the Contract. Based on Plaintiff's allegations, and all reasonable inferences that can be drawn in its favor, DCM's actions hue closer to that of a party that was acting under the obligation of a contract than one that is merely assisting in its administration. *See ESI*, 61 F. Supp. 2d at 73-74 (holding that non-signatory to contract was in privity with signatories). Given these allegations, Plaintiff has met its burden of putting forth a prima facie case for jurisdiction over DCM.[5] Therefore, the Court will not reach Plaintiff's alternate grounds for asserting jurisdiction based on the Contract, because the Court has already held that jurisdiction is proper based on allegations that DCM assumed the Contract.

---

[5]DCM's federal due process challenge is without merit, because DCM's assumption of the Contract, and thus the forum-selection clause, was consensual. That precludes a federal due process challenge to jurisdiction unless it would be unreasonable and unjust for the Court to extends its jurisdiction over DCM. *See ICC Indus. v. Israel Disc. Bank, Ltd.*, No. 04 Civ. 6945, 2005 WL 1844616, at *5 (S.D.N.Y. July 29, 2005); *Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333-34 & n.5 (S.D.N.Y. 2005). Extending jurisdiction over DCM in this case is neither unreasonable nor unjust in light of its assumption of the Contract and contacts with New York, discussed below. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (discussing federal due process standard for personal jurisdiction).

*See Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 455 (E.D.N.Y. 2004) (declining to reach alternate grounds for jurisdiction once court concluded that it had jurisdiction); *In re Complaint of Rationis Enters., Inc. of Panama*, 210 F. Supp. 2d 421, 430 (S.D.N.Y. 2002) (same).

 Plaintiff has also alleged various non-contract claims.  Next, the Court must consider whether there is personal jurisdiction over the non-contract claims, because "[P]laintiff[] must show jurisdiction over the defendants for each cause of action."  *Ainbinder v. Potter*, 282 F. Supp. 2d 180, 188 (S.D.N.Y. 2003).  DCM's assumption of the Contract does not give this Court personal jurisdiction over the non-contract claims, because the Contract's forum-selection clause is limited to construction and interpretation of the Contract.  Therefore, for this Court to hear Plaintiff's non-contract claims, there must be either general or specific personal jurisdiction, the latter under New York's long-arm statute, over DCM.  "[T]he Court has discretion to order further discovery on the jurisdictional issue, provided that the plaintiff makes a threshold showing of jurisdiction and establishes that . . . [its] position is not frivolous."  *Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664, 2005 WL 612814, at *5 (S.D.N.Y. Mar. 14, 2005).  Plaintiff's jurisdictional allegations, which are discussed below, cite to numerous contacts with the forum, related and unrelated to performance of the Contract.  Plaintiff's allegations are not frivolous and are sufficient to warrant further discovery on the limited question of whether there is general or personal jurisdiction over DCM.  Discovery must be completed within sixty days.

C.  Motion to Dismiss for Failure to State a Claim

　　1.  Alter Ego Theory[6]

Pursuant to Fed. R. Civ. P. 12(b)(6), DCM challenges Plaintiff's allegations that DCM is

NSBA's alter ego.  In a diversity case such as this one, the Court looks to the forum state's

choice of law provisions to decide which body of substantive law to apply.  *See Am. Fuel Corp.*

*v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).  "Under New York choice of law

principles, 'the law of the state of incorporation determines when the corporate form will be

disregarded and liability will be imposed on shareholders.'"  *Fletcher v. Atex, Inc.*, 68 F.3d 1451,

1456 (2d Cir. 1995) (alterations omitted) (quoting *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d

130, 132 (2d Cir. 1993)); *accord In re Alstom SA*, 454 F. Supp. 2d 187, 215 n.22 (S.D.N.Y.

2006).  DCM is incorporated in California, so New York's choice of law principles trigger the

application of California's substantive law.  Plaintiff quarrels with that conclusion, because it

considers DCM bound by the Contract's forum-selection clause.  Plaintiff thinks New York law

should apply.

　　Plaintiff's position is not totally without merit.  The Second Circuit has held that a party

can consent to the application of another state's law, choice of law principles notwithstanding.

*See Am. Fuel Corp.*, 122 F.3d at 134; *see also Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-*

*Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989).  The problem with Plaintiff's

argument is not that DCM consented to be bound by the Contract, but that the wording of the

_____

[6]Although there is personal jurisdiction over DCM because of its assumption of the
Contract, the Court must consider Plaintiff's alter ego allegations because Plaintiff has pled non-
contract causes of action. Plaintiff's alter ego allegations, therefore, are potentially separate and
apart from the contract-based claims, and therefore, the Court must now address DCM's Motion
to Dismiss the non-contract causes of action.

Contract does not favor Plaintiff.  The relevant language in the forum-selection clause states that

the "Agreement shall be governed by, construed and interpreted according to the laws of the

State of New York."  (Goldstein Decl. Ex. A3.)  The question here is whether the Contract

requires the application of New York law to the alter ego claim in this case.  The Court holds that

it does not.  The Contract's choice of law provision applies only to construction and

interpretation of the Contract, not to all collateral claims arising from the Contract.  California's

substantive law will guide the Court's alter ego analysis, because the factors the Court must

assess in an alter ego claim are not related to the construction and interpretation of the Contract.[7]

*See Rondout Valley Cent. School Dist. v. Coneco Corp.*, 339 F. Supp. 2d 425, 440 (N.D.N.Y.

2004) (holding that veil piercing analysis is distinct from the matters to which the forum-

selection clause applies); *see also United Trade Assocs. Ltd. v. Dickens & Matson (USA) Ltd.*,

848 F. Supp. 751, 759 (E.D. Mich. 1994) ("Although the choice of law clause directs this Court

to interpret the contractual dispute under English law, the issue of piercing the corporate veil is

collateral to the contract, and thus this Court is not bound by the choice of law provision.").

Under California law, to state a prima facie case of alter ego liability, a plaintiff must

show that "'(1) that there is such unity of interest and ownership that the separate personalities of

---

[7]The Court's decision to apply California's substantive law on the alter ego issue is also
compelled by a plain reading of the Contract.  The Contract's forum-selection clause merely
states that New York law governs construction and interpretation of the Agreement.  New York
law includes New York's choice of law principles, which command the application of California
law.  Thus, even if the Court were to credit Plaintiff's view of the Contract, the Contract should
be read to abide by the application of California law because that is what New York law says
should govern.  The Court does not rely principally on this argument for resolving the question of
which law to apply, because the Parties failed to raise this argument in their briefs.  Nonetheless,
this is an independent reason to apply the substantive law of California, rather than New York,
on this discrete issue.

[the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'"[8] *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (second alteration in original) (quoting *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)); *accord Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). "Underlying both of these factors is a general presumption in favor of respecting the corporate entity." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995); *accord Cargnani v. Pewag Austria G.m.b.H.*, No. CIV. S-05-0133, 2007 WL 415992, at *6 (E.D. Cal. Feb. 5, 2007). "The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the former.'" *Unocal*, 248 F.3d at 926 (quoting Calvert, 875 F. Supp. at 678); *see also Ministry of Def. of the Islamic Rep. of Iran v. Gould, Inc.*, 969 F.2d 764, 769 (9th Cir. 1992) (explaining that the first prong asks whether "sufficient respect was paid to corporate formalities"). Under the second prong, "[t]he injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004); *see also Tomaselli v. Transamerica Ins. Co.*, 31 Cal. Rptr. 2d 433, 443 (Ct. App. 1994) (listing examples of the "critical facts" needed to establish that it would be inequitable to respect

---

[8]Although New York and California's alter ego law are not identical, they bear significant similarities. *See MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001) ("Under New York law, a court may pierce the corporate veil where 1) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" (quoting *Am. Fuel Corp.*, 122 F.3d at 134)). The Court's holding – that Plaintiff has adequately pled an alter ego theory – is unaffected by the application of either jurisdiction's law.

separate corporate identities "as inadequate capitalization, commingling of assets, [or] disregard of corporate formalities").

Courts are to consider a number of factors in assessing whether alter ego liability is proper, such as:

> (1) commingling of funds and other assets; (2) holding out by one entity that is liable for the debts of another; (3) identical equitable ownership of the two companies; (4) use of the same offices and employees; (5) use of one company as a mere shell for the other; (6) inadequate capitalization; (7) lack of segregation of corporate records; and (8) identical directors and officers.

*Miller v. IBM Corp.*, No. C02-2118, 2006 WL 2792416, at *5 (N.D. Cal. Sept. 26, 2006).

First, the Court must decide whether Plaintiff has adequately pled a unity of interest and ownership between DCM and NSBA that is sufficient to question their separate existence. In consideration of this issue, the Court also relies on the factors outlined in Miller, *id.* at *5, although no one factor is dispositive, *see Monaco v. Liberty Life Assurance Co.*, No. C06-07021, 2007 WL 1140460, at *5 n.8 (N.D. Cal. Apr. 17, 2007) ("Admittedly, no single factor in isolation is normally sufficient to establish alter ego liability."). Plaintiff alleges a number of facts that are sufficient under California law to question the independence and separateness of DCM and NSBA. Plaintiff alleges that DCM admitted to being the actual party in interest under the Contract (First Am. Compl. ¶¶ 66-67, 71, 79); that DCM has satisfied NSBA's financial obligations under the Contract by making several substantial payments to Plaintiff for services rendered (*id.* ¶¶ 72-76); that DCM dominated NSBA and the management of Plaintiff's performance under the Contract (*id.* ¶¶ 68-70, 77-78, 80-82); that DCM micro-managed performance under the contract (*id.* ¶ 65); and that DCM and NSBA "share common

17

executive(s), officers and ownership[,]" such as Dennis Mario, who Plaintiff claims is NSBA's

Chief Executive Officer and an executive at DCM (*id.* ¶ 63).

These allegations are sufficient to make out a prima facie case that NSBA was DCM's

instrumentality. *See Unocal*, 248 F.3d at 926. Plaintiff's allegations also touch upon several of

the factors identified in *Miller*, such as factors one, two, three, five, and eight. Although Plaintiff

has not pled all of the *Miller* factors, its allegations are sufficient when considering "the totality

of the circumstances . . . ." *Monaco*, 2007 WL 1140460, at *5 n.8; *see also Butler v. Adoption*

*Media, LLC*, No. C 04-0135, --- F. Supp. 2d ----, 2007 WL 963159, at *45 (N.D. Cal. Mar. 30,

2007) ("Because no one factor governs, the court should look at all the circumstances to

determine whether the alter ego doctrine applies."). Furthermore, California courts have de-

emphasized the significance of some factors, which, for the most part, also happen to be the ones

missing from the First Amended Complaint. *See Mid-Century Ins. Co. v. Gardner*, 11 Cal. Rptr.

2d 918, 22-23 (Ct. App. 1992) (holding that inadequate capitalization or concentration of

ownership and control should not be relied on too heavily). As the Ninth Circuit has stated, an

alter ego claim is appropriate when "a parent corporation uses its subsidiary as a marketing

conduit and attempts to shield itself from liability based on its subsidiaries' activities, . . . [or]

where the record indicates that the parent dictates every facet of the subsidiary's business – from

broad policy decisions to routine matters of day-to-day operation." *Unocal*, 248 F.3d at 926

(alterations, internal quotation marks, and citations omitted). Here, Plaintiff's allegations support

the second scenario described in *Unocal*, if not both scenarios.

Next, the Court must decide whether failure to recognize that NSBA is DCM's alter ego

would be unjust or inequitable. "California courts generally require some evidence of bad faith

conduct on the part of defendants before concluding that an inequitable result justifies an alter

ego finding."  *Neilson v. Union Bank of Calif., N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal.

2003); *see also Associated Vendors, Inc. v. Oakland Meat Co.*, 26 Cal. Rptr. 806, 816 (App. Ct.

1962) ("The purpose of the [alter ego] doctrine is not to protect every unsatisfied creditor, but

rather to afford him protection, where some conduct amounting to bad faith makes it inequitable

. . . for the equitable owner of a corporation to hide behind its corporate veil." (alteration added)).

The fraud alleged here is that "DCM's domination of NSBA was used to injure IMG because

DCM and NSBA failed to sufficiently compensate IMG . . . ."  (First Am. Compl. ¶ 64.)  Plaintiff

further alleges that DCM derived "substantial pecuniary benefit" from Plaintiff's performance

under the Contract (*id.* ¶ 80), because DCM was the actual "intended beneficiary" (*id.* ¶ 81).

These allegations, which the Court must accept as true for this Motion, amount to an attempt by

DCM to escape liability under the Contract and pass it off to NSBA, even though DCM has

allegedly acknowledged that the Contract was intended to benefit DCM.  As alleged, DCM, a

non-signatory to the Contract, was acting in bad faith by attempting to hide behind its corporate

form to shield itself from liability for its failure to fully compensate Plaintiff for its performance.

*Cf. Sonora Diamond Corp. v. Superior Ct.*, 99 Cal. Rptr. 2d 824, 837 (Ct. App. 2000)

(suggesting that fraud or deception constitute bad faith).  DCM's alleged acts have crossed the

threshold from legitimate business conduct to actions taken in bad faith.  *See Raby v. Arthur*

*Andersen, LLP*, No. B174043, 2005 WL 3462732, at *10 (Cal. Ct. App. Dec. 19, 2005) ("The

alter ego doctrine is directed to actions taken in bad faith, not legitimate business conduct

designed to limit risk . . . .").[9]

## 2.  Quasi-contract Claims

Next, DCM argues that Plaintiff's quasi-contract claims must be dismissed, because it would be unfair to permit a party to recover twice – once for a contract claim and again for a quasi-contract claim.  Although Plaintiff cannot recover twice, it can plead contract claims and, in the alternative, it can plead quasi-contract claims.  *See Nielsen Media Research, Inc. v. Microsystems Software, Inc.*, No. 99 Civ. 10876, 2002 WL 31175223, at *7 n.2 (S.D.N.Y. Sept. 30, 2002) ("It is axiomatic that . . . a plaintiff may plead quasi-contract claims in the alternative to a contract claim.").  "While a plaintiff may not recover under both contract and quasi-contract, he is entitled to plead and present the two alternative theories."  *Culver v. Merrill Lynch & Co.*, No. 94 Civ. 8124, 1995 WL 422203, at *6 n.4 (S.D.N.Y. July 17, 1995).  Because a motion under Rule 12(b)(6) tests only the sufficiency of the pleadings, DCM's argument is rejected.

---

[9]Plaintiff's alter ego allegations also support extending personal jurisdiction over DCM. When a court finds that personal jurisdiction exists over an individual or corporation, personal jurisdiction exists also over the individual's or corporation's alter ego.  *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 142-43 (2d Cir. 1991).  Therefore, Plaintiff's alter ego allegations serve as an independent basis for personal jurisdiction over DCM.

### III.  Conclusion

For the reasons stated above, DCM's Motion to Dismiss the Amended Complaint for lack

of personal jurisdiction is DENIED without prejudice to renew after jurisdictional discovery.

DCM's Motion to Dismiss the Amended Complaint for failure to state a sufficient alter ego

claim and quasi-contract claims is also DENIED.

The Clerk of the Court is directed to terminate the Motion.  (Doc. No. 17.)

SO ORDERED.

Dated:        June  _11_ , 2007
              New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

21

Service List:

Sean A. Moynihan, Esq.
Peter J. Glantz, Esq.
Klein, Zelman, Rothermel & Dichter, L.L.P.
485 Madison Ave.
New York, New York 10022
(212) 935-6020
Fax: (212) 753-8101
Counsel for Plaintiff Impulse Marketing Group, Inc.

Andrew B. Lustigman, Esq.
Scott Shaffer, Esq.
The Lustigman Firm, P.C.
149 Madison Ave., Suite 805
New York, New York 10016
(212) 683-9180
Fax: (212) 683-9181
Counsel for Defendant Direct Contact Media, Inc.